LEE CHRISTY, Plaintiff-Appellant, v. PAUL PETRUS, d/b/a SOUTH SIDE AUTO PARTS, Defendant-Respondent, No. 44994—295 S. W. (2d) 122.

Court en Banc, November 12, 1956.

*Albert J. Yonke* for appellant.

*R. C. Tucker, C. Thomas Carr* and *Tucker, Murphy, Wilson & Siddens* for respondent.

[123] HOLMAN, C.—Action for damages wherein plaintiff sought to recover $7,500 actual and $10,000 punitive damages for his alleged wrongful discharge by his employer, defendant therein. At the commencement of the trial defendant objected to the introduction of any evidence in support of the allegations in the petition for the reason that the petition failed to state a claim upon which relief could be granted. At that time he also called attention to his previously filed written motion to dismiss based upon the same ground. The court sustained both the objection and the motion and entered judgment for defendant upon both counts of said petition. Plaintiff has duly appealed.

Plaintiff alleged that he had been employed by defendant as a machinist; that on June 6, 1952, he sustained an injury in the course of his employment; that plaintiff filed a claim for compensation under the provisions of the Missouri Workmen's Compensation Law, Chapter 287 (all statutory references, unless otherwise indicated, are to RSMo 1949, V.A.M.S.); that as a direct result of plaintiff filing said claim and further exercising his rights under said law, defendant discharged plaintiff, and plaintiff has since been unable to obtain employment as a machinist and has been otherwise damaged.

It was alleged that the conduct of defendant in so discharging plaintiff was in violation of Section 287.780, which reads **[124]** as follows: ''Every employer, his director, officer or agent, who discharges or in any way discriminates against an employee for exercising any of his rights under this chapter, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than fifty nor more than five hundred dollars, or by imprisonment in the county jail for not less than one week nor more than one year, or by both such fine and imprisonment.''

■ The rule is well established in this state and elsewhere that in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such case, no action can be maintained for wrongful discharge. Culver v. Kurn, 354 Mo. 1158, 193 S. W. 2d 602, 166 A.L.R. 644; Forsyth v. Board of Trustees of Park College, 240 Mo. App. 622, 212 S. W. 2d 82; Bell v. Faulkner, Mo. App., 75 S. W. 2d 612; Odell v. Humble Oil & Refining Co., 201 F. 2d 123. It therefore becomes apparent that plaintiff's petition does not state a claim for relief unless it may be said that the foregoing statute, in addition to providing that the employer violating same shall be guilty of a misdemeanor, also gives the employee a claim for the recovery of personal damages arising from the alleged wrongful discharge. That is the sole question for our determination.

■ At the outset it should be made clear that there is no analogy between the statute before us and the cases wherein it is held that violation of a duty prescribed by a statute is negligence per se. That rule is based on the underlying theory that in such cases a standard of care has been fixed by law and, therefore, failure to conform to such standard is negligence as a matter of law. Neither should we consider as applicable the many situations where an act is made criminal by statute and the injured party has an existing civil action independent of the statute (assault, embezzlement, etc.). In those cases the statute does not create the civil right of action, nor does its enactment preclude the injured party from maintaining his private action. In the instant case we must determine whether the violation of a criminal statute providing a penalty for the discharge of an employee for the reason specified gives rise to a claim for damages by the employee, where no such claim existed independently of the statute.

Section 287.780 was enacted in 1925 as a part of the original Missouri Workmen's Compensation Law. Since that time the provisions of that section have never been interpreted by the appellate courts of this state. As far as we can determine it has never been cited or referred to. Counsel have apparently been unable to find any similar statute among the laws of other states. No case has been cited in which this precise question has been determined and we have been unable to find any.

In support of his contention that the instant section gave him a claim for damages for the alleged wrongful discharge, plaintiff relies mainly on the decisions construing the "service letter" statute, Section 290.140, which he argues is analogous. That section is as follows: "Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him * * * to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor * * *." Since the decision in [125] the case of Cheek v. Prudential Ins. Co., Mo. Sup., 192 S. W. 387, that section has been construed as giving the former employee a right of action for damages against the corporate employer whose officer refused to issue the requested letter.

Although the Cheek case contains some statements that tend to support plaintiff's position, it should be noted that the provisions of the "service letter" statute are materially different from those contained in the section before us. For that and other reasons we have concluded that the "service letter" statute and the cases construing it should not, by analogy, control our decision on the issue before us. In the Cheek case the court placed great emphasis on the fact that the statute there under consideration enjoined upon the corporate official a positive, affirmative duty to issue the letter and concluded that damages could be recovered for a breach of said duty. In a later case this court again considered that statute and indicated that the first part of the section, relating to the duty of issuing the letter, is remedial and is the basis for the damage action against the employer, and the latter portion is penal and may be enforced by the prosecution of the corporate superintendent or manager. State ex rel. v. Hughes, 350 Mo. 869, 169 S. W. 2d 328. It therefore becomes significant to note that the instant section has no provision relating to any positive duty, but merely

provides a criminal penalty in the event the employer shall discharge an employee for the reason stated.

It may be of interest to note that the court, in the Cheek case, in considering the remedial nature of the "service letter" statute, recognized the historical reasons for the enactment of that law. It was stated that a great public evil had arisen in relation to the method used by employers in obtaining information from previous employers of their applicants for employment, and that the statute was enacted to regulate this custom which had resulted in great injustice and oppression upon large numbers of laboring people. By way of contrast, it may be stated that there does not appear to have been any great remedial need for the instant section. The Workmen's Compensation Law was just being enacted and there could not have been any custom or practice in existence in this State, relating to the discharge of workmen's compensation employee-claimants, which needed to be regulated or corrected. The section was obviously of a preventive rather than remedial nature.

It is well settled that statutes in existence at the time and place of making a contract, and at place of performance, which affect the validity, construction and enforcement of said contract, enter into and form a part thereof as if expressly incorporated therein. Curators of Central College v. Rose, Mo. Sup., 182 S. W. 2d 145. In construing the "service letter" statute the courts have recognized and applied this rule. For example, see the case of Brink's, Inc. v. Hoyt, 8 Cir., 179 F. 2d 355, 358, in which the rule was stated and applied as follows: "The above quoted statute was on the statute books at and for a long time prior to the time plaintiff entered the employ of the defendant Brink's, Inc. It therefore became a part of the contract of employment so that the action of plaintiff was in the nature of an action for damages for the breach of his employment contract."

The date of plaintiff's employment does not appear in the petition. We will assume that it was subsequent to the enactment of Section 287.-780 and that said section, if applicable, became a part of the employment contract. As indicated, a reading of the instant section will reveal that it is quite different from the "service letter" statute. As heretofore stated, we have construed that statute as being divisible into two parts, the first part, imposing a duty to issue the service letter, being remedial and forming a basis for enforcement by an action for damages, and the second part, being penal, [126] to be enforced by prosecution of the superintendent or manager of the corporation. (State ex rel. v. Hughes, supra.) It is significant that the instant section is only comparable to the second part of the "service letter" statute. No provision appears therein which places any affirmative duty upon the employer. Actually, it contains no words which prohibit the employer from discharging an employee for the stated reason. The section simply deals with the consequences in the event an em-

ployee is so discharged. It provides, "Every employer * * * who discharges * * * an employee for exercising any of his rights under this chapter shall be deemed guilty * * *." Since this section contains no provision comparable to the portion of the "service letter" statute which has been held to authorize an action for damages, it would seem that the cases construing the "service letter" statute should not be considered as authorities supporting plaintiff's right to maintain a civil action based upon his discharge for the reason stated in Section 287.780.

In construing the instant section in order to determine whether it gives plaintiff a claim for damages, as he contends, our important task is to ascertain the intent of the lawmakers, and to do so, if possible, from the language used. Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. 2d 920. We should give the language its plain and rational meaning and an unambiguous statute can rarely, if ever, be construed to be something other than it was written to be. City of Charleston v. McCutcheon, 360 Mo. 157, 227 S. W. 2d 736.

We think it may be correctly stated that a statute which creates a criminal offense and provides a penalty for its violation, will not be construed as creating a new civil cause of action independently of the common law, unless such appears by express terms or by clear implication to have been the legislative intent. Everett v. Littleton Const. Co., 94 N. H. 43, 46 A. 2d 317; Mezullo v. Maletz, 331 Mass. 233, 118 N. E. 2d 356; Hayman v. Morris, 36 N. Y. S. 2d 756; Ward v. Severance, 7 Cal. 126; Beegle v. Thomson, 138 F. 2d 875. While the case of Cheek v. Prudential Ins. Co., supra, may appear to approve a somewhat different rule, we think it must be assumed, irrespective of what may have been said in that opinion, that the court, in recognizing the historical reasons for the enactment of the "service letter" statute and in considering the specific language used therein, must have found a legislative intent to create a civil cause of action in the employee.

It is, of course, conceded that the instant section does not expressly provide that a discharged employee have a claim against the employer for damages resulting from his discharge for the reason specified therein. We are unable to find anything in the wording thereof, or in the historical background of the statute, to indicate any legislative intent to create a new civil claim of this nature in the discharged employee. In the absence of any indication of such legislative intent, we feel constrained to assume that had the legislature desired to provide for enforcement of this section by civil action, as well as by criminal prosecution, such a provision would have been incorporated therein.

We should bear in mind that the section under consideration was not enacted alone but was one of seventy-nine sections that made up our original Workmen's Compensation Law. Laws of Missouri, 1925, pages 375 to 407, inclusive. Therein, the legislature specified in minute

detail the rights and liabilities of employees, employers and insurers in relation to the vast industrial field encompassed in that Act. We can hardly conceive of the legislature making such careful provision for the rights and compensation of injured employees covered by the Act and yet omitting a specific provision for recovery of damages for wrongful discharge if there had been any intent to create such a right.

[127] It is not unusual for the legislature to make specific provision for the recovery of damages and penalties by injured parties. A casual examination of our statutes will disclose many such instances, and in some of them criminal punishment is also provided. For example, in Chapter 409 it is provided that certain securities not be sold in this State unless registered with the supervisor of corporation registration. In the event of a sale in violation of such provisions, it is provided in Section 409.240 that the purchaser may recover from the seller the full amount paid for such securities, together with costs and a reasonable attorney fee. In Section 409.300(3) the same violation is made a misdemeanor punishable by fine or imprisonment. Other sections wherein specific provision has been made for recovery of damages and penalties by those injured as a result of the violation thereof, include the following: Section 28.200 (which provides for recovery of a penalty for neglect of duty from the Secretary of State, by a person aggrieved); 30.380 and 30.420 (which provide penalties to be recovered by the State from the State Treasurer for failure to perform certain duties, and further providing that such failure be a misdemeanor); 140.280(2) (providing for collection of a penalty from a purchaser at delinquent tax sale who fails to pay his bid); 290.080 (which makes it a misdemeanor for certain employers to fail to pay employees at least semimonthly and to furnish statement showing amount of deductions) and 290.090 (providing for employees to collect a penalty by civil action in event employer fails to pay wages at least every fifteen days); 290.100 (providing for collection of a penalty by civil action by every employee whose wages are reduced by a corporate employer without said employer giving thirty days' prior notice thereof); 290.110 (which provides for collection by an employee from corporate employers of a penalty in the event unpaid wages are not paid within seven days after discharge of employee); 290.130 (which provides an action for wrongful discharge where employment is for a definite period of time and employee is discharged without cause before expiration thereof); 375.420 (providing for collection of 10% penalty and a reasonable attorney fee for vexatious refusal by an insurance company to pay loss); 442.340 (which provides for forfeiture of $100 to be recovered by person injured from any person who shall neglect to appear when served with subpoena and testify relating to act of witnessing certain instruments); 443.370 (providing for collection of double the amount of an overcharge made by trustees for compensation for selling property at auction under deed of trust or similar in-

strument); 508.170 (providing that circuit clerk shall forfeit $100 to party aggrieved if he shall fail to immediately prepare transcript after order of change of venue and transmit to clerk of court where removed); 537.260 (which makes railroad liable irrespective of negligence for the value of animals killed where right of way is unfenced); 537.340, 537.350 and 537.370 (providing for the collection of double and treble damages for certain acts damaging realty); 537.390, 537.400 and 560.590 (which provide for collection of penalties by person damaged from person who shall wilfully set fire to woods or prairies, and further providing that such act be deemed a misdemeanor); 537.-410 (which provides for collection of damages and a reasonable attorney fee from any person constructing a boom across any stream and thus causing damage arising from overflow); 537.420 (providing for collection of treble damages for waste committed by life tenant); and 545.630 (providing for collection by the State of a penalty not exceeding $500 from court clerk failing to perform certain duties in relation to change of venue in criminal cases).

It is our view that the fact that the legislature has, in so many instances, made specific provision for such recoveries lends some weight to our conclusion that such a provision would have been included in the instant section had it been intended that [128] discharged employees be provided a recovery for damages resulting from their discharge for exercising any of their rights under Chapter 287.

One Missouri case has been cited which we think, by analogy, strongly supports our decision herein. It is Bell v. Faulkner, supra, which involved what is now Section 129.080. That section makes it a felony for any employer to discharge an employee because of his political opinions or through any unjust or unlawful means to attempt to procure such employee to vote or refrain from voting for any candidate for public office. The plaintiff therein filed a suit for damages alleging that the defendant discharged him because he would not vote for certain candidates in a city election. The court denied recovery, holding that such a cause of action did not exist prior to the enactment of said statute, and since there was no provision therein for civil liability, no such action could be maintained. That section was distinguished from the "service letter" statute, the court pointing out that it did not place a positive duty on the employer but was purely prohibitive in character and concluded that its violation could be punished only by imposing the criminal penalty.

Plaintiff has called our attention to the rule that the Workmen's Compensation Law should be liberally construed in favor of the employee. We have considered that rule and concluded that it should not cause us to reach a different decision in this case.

The foregoing will indicate our view that the trial court properly sustained the motion to dismiss and entered judgment accordingly.

The judgment is affirmed.

PER CURIAM:—The foregoing opinion by HOLMAN, C., is adopted as the opinion of the Court en Banc. All concur, except *Hyde, J.,* who concurs in result.