NATIONWIDE MUTUAL INSURANCE COMPANY v. CARLISLE NEWTON DAVIS, CAMILLA M. HULL, RUSSELL MAUGHN HULL, JR., AND EMPLOYERS MUTUAL CASUALTY COMPANY

No. 691SC561

(Filed 14 January 1970)

1. **Insurance § 95— automobile liability policy — cancellation by insurer — notice to Department of Motor Vehicles**

   A liability insurance policy issued pursuant to The Vehicle Financial Responsibility Act of 1957 may not be cancelled or terminated by the insurer unless the insurer has given the Department of Motor Vehicles notice of the cancellation fifteen days prior to the effective date of the cancellation. G.S. 20-309(e).

---

---

**2. Insurance § 95—    automobile liability policy — cancellation by insured — notice to Department of Motor Vehicles by insurer**

Where the insured terminates a policy issued pursuant to The Vehicle Responsibility Act of 1957, the insurer is required immediately to notify the Department of Motor Vehicles, but failure to give such notice does not affect the validity or binding effect of the cancellation. G.S. 20-309(e).

**3. Insurance § 95—    certified    assigned    risk    policy — cancellation — notice**

Provisions of G.S. 20-279.22 requiring the insurer to give statutory notice of cancellation irrespective of whether the insurance coverage is terminated through acts of the insured or the insurer apply only to cancellation of certified assigned risk policies issued under The Motor Vehicle Safety-Responsibility Act of 1953.

**4. Insurance § 95—    automobile liability policy — cancellation by insurer — notice to insured**

In order for an insurer to terminate by cancellation or failure to renew a policy issued under the provisions of The Vehicle Financial Responsibility Act of 1957, G.S. 20-310(a) requires the insurer to give the insured 15 days notice and warning of the effect of failure to maintain such insurance, but the statute does not require the insurer to notify the insured where the insured himself terminates the policy.

**5. Insurance § 95—    automobile liability policy — cancellation by insurer or insured — required notice**

In order for an insurer to terminate a liability policy issued pursuant to the provisions of The Vehicle Financial Responsibility Act of 1957, it must give 15 days prior notice thereof to its insured and to the Motor Vehicles Department, and failure to give notice in proper form to either renders ineffective an attempted termination by the insurer; but where such a policy is terminated or cancelled by an insured, the insurer is not required to give notice of cancellation to the insured, and although the insurer must immediately notify the Department of Motor Vehicles, failure to give such notice does not affect the termination of coverage.

**6. Insurance §§ 3, 95—    renewal of insurance policy — offer and acceptance — failure to renew**

Renewal of an insurance policy is a bilateral transaction involving both an offer and acceptance, and where no offer to renew is made by the insurer, there can be no acceptance, and a failure to renew under such circumstances is unilateral action on the part of the insurer.

**7. Insurance § 95—    cancellation of automobile liability policy — offer to renew — failure to renew — unilateral act of insurer — notice to insured and Department of Motor Vehicles**

Premium notice sent by insurer to the insured stating the amount of the semi-annual premium due on insured's automobile policy on a specified date and stating in small print that automobile insurance is important security which one cannot afford to be without and that prompt payment of the premium would assure continued protection of the policy, *is held* not to constitute an offer to renew the insurance policy, but is simply a statement of an account that will be due on the date indicated, and where

the insured failed to make payment within the time specified in the notice, attempted termination of the policy was a unilateral act of the insurer which required the insurer to give notice to the insured and to the Department of Motor Vehicles in order for termination of the policy to become effective.

APPEAL from *Cohoon, J.,* 20 September 1969 Session of PASQUOTANK Superior Court.

This action for a declaratory judgment was instituted on 24 April 1969 to have determined the respective rights and liabilities of the parties under liability insurance policies issued by plaintiff to defendant Carlisle Newton Davis. The court below found the facts which are set forth in substance as follows:

(1) The plaintiff, hereinafter referred to as insurer, issued to defendant Davis, hereinafter referred to as insured, automobile liability insurance policy number 61-B-282-480 from 1 April 1959 to 25 May 1959. The policy was thereafter renewed and after reinstatement of the policy effective 21 December 1965, the policy period expired on 21 December and 21 June.

(2) The said policy, and renewals of the policy thereafter, covered a 1965 Ford Thunderbird automobile of the insured which was involved in a collision on 13 July 1967 with a vehicle driven by the defendant Camilla M. Hull. The collision is the subject of this controversy.

(3) A renewal of the policy became effective for a period from 21 December 1966 to 21 June 1967. The premium date was 21 June 1967.

(4) In an envelope post-dated 1 June 1967, insurer mailed and insured received a notice advising insured that the premium in the sum of $30.60 was due on said policy on 21 June 1967.

(5) No cancellation notice was thereafter mailed by insured.

(6) The policy premium had not been paid at the expiration of the 17 day grace period on 8 July 1967.

(7) The collision out of which this controversy arises occurred on 13 July 1967 at 12:01 p.m.

(8) After the collision and on the same date insured advised insurer's agent of the collision, paid the premium due and signed a "reinstatement application." Insured also filled out the collision or accident form number SR-21, stating thereon that he was insured under policy number 61-B-282-480 and gave notice of same to the Department of Motor Vehicles.

(9)   Insured had given no notice to insurer or its agent that he desired or requested a cancellation of said policy.

(10)   Thereafter insurer issued to insured a new and separate policy of insurance, No. 61-502-708, bearing an effective date of from 12:01 a.m., 13 July 1967, to 12:01 a.m., 13 January 1968.

(11)   At the time of the collision the insurance certified by insured and on file with the Department of Motor Vehicles was policy number 61-B-282-480 and no notice of termination of said policy was ever filed with the Department of Motor Vehicles by insurer in either 1967 or 1968 and insurer did not notify the Department of Motor Vehicles that the insured had attempted to terminate, or had terminated said policy.

(12)   Neither policy issued to insured is an assigned risk policy.

(13)   All parties hereto have a legal and bona fide interest in the controversy involved herein.

Based upon the findings set forth above, the trial judge concluded and adjudged that policy number 61-B-282-480 was not effectively cancelled by insured or insurer and was in full force and effect and provided liability coverage on insured's vehicle at the time of the collision on 13 July 1967. The new policy, No. 61-502-708, issued with an effective date of 12:01 a.m., 13 July 1967, was declared not to have been in effect at the time of the collision. Plaintiff appealed.

*Leroy, Wells, Shaw & Hornthal by Dewey W. Wells for plaintiff appellant.*

*Hall & Hall by John H. Hall, Jr., for defendant appellee Employers Mutual Insurance Company.*

*Twiford and Abbott by William Brumsey, III, for defendant appellees Camila M. Hull and Russell M. Hull, Jr.*

GRAHAM, J.

The plaintiff insurer does not challenge the court's findings of fact but contends that the findings do not support the conclusions of law and the judgment entered thereon.

It is conceded, and the court so found, that no notice of cancellation was given by plaintiff insurer to the insured or to the State Motor Vehicles Department. If notice to either was required in order to terminate coverage under the policy, the judgment is supported. We therefore discuss the circumstances under which such

notice must be given by the insurer in order to effectively terminate coverage under an automobile liability insurance policy.

G.S. 20-309(e) provides in pertinent part as follows:

"No insurance policy provided in subsection (d) may be terminated by cancellation or otherwise by the insurer without having given the North Carolina Motor Vehicles Department notice of such cancellation fifteen (15) days prior to effective date of cancellation. Where the insurance policy is terminated by the insured the insurer shall immediately notify the Department of Motor Vehicles that such insurance policy has been terminated."

[1] Plaintiff insurer insists that its failure to notify the Motor Vehicles Department that the policy in question had been cancelled is immaterial and cites in support of this contention the cases of *Nixon v. Insurance Co.*, 258 N.C. 41, 127 S.E. 2d 892; and *Levinson v. Indemnity Co.*, 258 N.C. 672, 129 S.E. 2d 297. Both of these cases held that the cancellation of a policy was not conditioned upon notice being given to the Commissioner of Motor Vehicles. "Neither defective notice, nor failure to give notice, *to the Commissioner* affects the validity or binding effect of the cancellation; . . . Hence, the policy is terminated before notice is sent to the Commissioner. Notice to the Commissioner *follows* cancellation." *Nixon v. Insurance Co., supra,* at 43. However, at the time the two cases cited above were decided the statutory provision requiring that notice of cancellation be given the Commissioner of Motor Vehicles (then a part of G.S. 20-310) required that such notice be mailed by the insurer not later than fifteen days *following* the effective date of a cancellation. Hence, the policy necessarily terminated *before* notice was mailed. By amendment effective 1 October 1963, this provision became the portion of G.S. 20-309(e) quoted above and it now provides that a liability insurance policy issued pursuant to The Vehicle Financial Responsibility Act of 1957 may not be cancelled or terminated by an insurer without the insurer having given the Motor Vehicles Department notice of the cancellation fifteen days *prior* to the effective date of cancellation. Consequently, notice to the Motor Vehicles Department under this amendment is now a condition precedent to cancellation by an insurer. If the insurer does not furnish the required notice, it may not cancel and the policy of insurance continues in effect. *Insurance Co. v. Hale,* 270 N.C. 195, 154 S.E. 2d 79.

[2] No change in G.S. 20-309(e) has been made respecting the duties of an insurer where the insured terminates the policy. The

statute still provides that the insurer shall immediately notify the Motor Vehicles Department that such insurance policy has been terminated. Under such circumstances, notice to the Department still follows cancellation and the decisions of *Nixon v. Insurance Co., supra,* and *Levinson v. Indemnity Co., supra,* are, in our opinion, still controlling.

[3]    Two statutory provisions relate to notice that must be given an insured before a policy is cancelled or terminated. The first, G.S. 20-279.22, relates to certified assigned risk policies issued under The Motor Vehicle Safety-Responsibility Act of 1953. Under the provisions of that statute it is incumbent upon the insurer to give the statutory notice of cancellation irrespective of whether the insurance coverage is terminated through acts of the insured or the insurer. The policy here in question was not a certified assigned risk policy and therefore the cancellation provisions of G.S. 20-279.22 are not here applicable.

·    The second provision is contained in G.S. 20-310(a) and it provides as follows:

> "No contract of insurance or renewal thereof shall be terminated by cancellation or failure to renew by the insurer until at least fifteen (15) days after mailing a notice of termination by certificate of mailing to the named insured at the latest address filed with the insurer by or on behalf of the policyholder. The face of the envelope containing such notice shall be prominently marked with the words 'Important Insurance Notice.' Time of the effective date and hour of termination stated in the notice shall become the end of the policy period. Every such notice of termination for any cause whatsoever sent to the insured shall include on the face of the notice a statement that financial responsibility is required to be maintained continuously throughout the registration period and that operation of a motor vehicle without maintaining such financial responsibility is a misdemeanor, the penalties for which are loss of registration plate for 60 days; and a fine or imprisonment in the discretion of the court."

[4]    The above provision relates to the notice and warning that must be given the insured by the insurer in the event his policy is terminated by insurer, whether the termination is by cancellation or *by failure to renew. Perkins v. Insurance Co.,* 274 N.C. 134, 161 S.E. 2d 536. It does not, as does G.S. 20-279.22 with respect to certified assigned risk policies, require the insurer to notify the insured where the insured himself terminates the policy. *Faizan v. Insurance Co.,* 254 N.C. 47, 118 S.E. 2d 303.

**[5]** It follows, under the applicable statutes, that where the insurer terminates a policy, it must give fifteen days prior notice thereof to its insured and to the Motor Vehicles Department. Failure to give notice in proper form to either renders an attempted termination by the insurer ineffective. But where a policy (other than a certified assigned risk policy) is terminated or cancelled by an insured, notice thereof is not required to be given to the insured, and although notice must immediately be given to the Motor Vehicles Department, the failure to give such notice does not affect the termination of coverage.

**[6]** The question here involved is therefore: Was the termination of the policy or its attempted termination an act of the insurer requiring notice as provided by the applicable statutes or was it an act of the insured requiring no such notice? Plaintiff insurer contends that it was an act of the insured in rejecting an offer to renew the policy made by the insurer in mailing to the insured the premium due notice. Renewal of an insurance policy is a bilateral transaction involving both an offer and acceptance. Where no offer to renew is made by the insurer there can be no acceptance and a failure to renew under such circumstances is unilateral action on the part of the insurer. *Connecticut Fire Insurance Company v. Williams,* 194 N.Y.S. 2d 952 (1959).

Plaintiff insurer insists that the premium notice in this case constituted an offer to renew the policy such as was given to the insured and rejected by him in the case of *Faizan v. Insurance Co., supra.* We do not agree.

In the *Faizan* case the written notice sent to the insured advised him that the policy would expire on 22 February 1959; that in order to renew it he must pay the premium in advance by 5 February 1959; and that if the premium was not paid by that time, the insured would have to apply through the Assigned Risk Plan if he desired further coverage. In addition the notice contained the following language:

> "UNDER THE PROVISIONS OF THE VEHICLE RESPONSIBILITY ACT OF THE STATE OF NORTH CAROLINA 'PROOF OF FINANCIAL RESPONSIBILITY IS REQUIRED TO BE MAINTAINED CONTINUOUSLY THROUGHOUT THE REGISTRATION PERIOD AND OPERATION OF A MOTOR VEHICLE WITHOUT MAINTAINING SUCH PROOF OF FINANCIAL RESPONSIBILITY IS A MISDEMEANOR.' "

In the case of *Perkins v. Insurance Co., supra,* it was held that

a notice containing the pertinent provisions of G.S. 20-310, includ-
ing the warning respecting the consequences of failure to maintain
insurance, was a prerequisite to termination for failure to renew a
policy on account of non-payment of premium. In distinguishing
the *Faizan* case, Bobbitt, J. (now C.J.), stated at page 143:

> "The ground of decision in *Faizan* was that the insured *rejected*
> the defendant's offer to renew the policy. In *Faizan,* notices
> given by the defendant to the plaintiff, although not in full
> compliance with the provisions of the quoted statute, were
> sufficient to advise the insured plainly of the consequences of
> his failure to renew. The insured made no response to the in-
> surer's notices. Instead, he 'applied through the Assigned Risk
> Plan for further insurance, but the policy thus obtained (from
> another insurer) was not in effect at the time of the accident
> in question.'"

[7]    In the instant case the notice relied upon by plaintiff as its
offer to renew is entitled "Premium Notice." It states: "The semi-
annual premium on your auto policy No. 61 282-480 is due on June
21, 1967." The amount due is specified as $30.60. In small print in
the lower left-hand corner the following appears: "Your auto in-
surance is important security you can't afford to be without. Prompt
payment of the premium shown above will assure you the continued
protection of this policy."

This premium notice makes no reference to the expiration date
of the policy. It contains no warning regarding the consequences of
a failure to pay the premium. The notice standing alone does not
indicate that the policy is subject to renewal on 21 June 1967 but
simply that a semi-annual premium payment is due on that date.
An insurer may not cancel for non-payment of premiums without
following the provisions of G.S. 20-309(e) and G.S. 20-310. *Perkins
v. Insurance Co., supra; Insurance Co. v. Hale, supra; Crisp v. In-
surance Co.,* 256 N.C. 408, 124 S.E. 2d 149.

The small print appearing on the premium notice is at most a
warning that unless payment is made the insured cannot be assured
that coverage will continue. The inference from this language is that
if the premium is not paid the insurer *may* terminate the coverage.
If the policy is not renewed under such circumstances the failure to
renew would be a unilateral act of insurer and would require strict
compliance with the notice statutes.

It is our opinion that a premium due notice such as mailed to the
insured in this case does not constitute an offer to renew a policy of

insurance such as was made in the *Faizan* case. Such a notice, standing alone, is simply a statement of an account that will be due on the date indicated. If payment is not made the insurer has the option of renewing the policy and treating the unpaid premium as an account receivable, or of refusing to renew the policy. If the insured refuses to renew, termination of coverage results from *its* action and notice to insured and the Motor Vehicles Department must be given as provided by the applicable statutes. The court's findings that such notice was not given in this case supports its conclusion that the insurance coverage was still in effect at the time of the collision on 13 July 1967 and the judgment is therefore affirmed.

Affirmed.

CAMPBELL and PARKER, JJ., concur.