**Mousa H. SHQEIR and Rita Shqeir, Appellants,**

v.

**EQUIFAX, INC. and American Family Insurance Company, Respondents.**

**No. 63161.**

Supreme Court of Missouri,
En Banc.

Aug. 23, 1982.

Donald W. Giffin, Charles M. Thomas, Kansas City, for appellants.

Charles E. Patterson, Stephen W. Grow, Kansas City, for respondents.

RENDLEN, Judge.

Plaintiffs, Mousa and Rita Shqeir, brought suit against American Family Insurance Company and Equifax, Inc. for failure to inform them of the actual reason for nonrenewal of two insurance policies on plaintiffs' automobiles, in violation of § 379.118, RSMo 1978.[1] The Shqeirs settled with Equifax but proceeded to trial against American Family. At the conclusion of the plaintiffs' evidence, the trial court directed a verdict in favor of the defendant. The Western District affirmed on the ground that no right of action accrued to the insured for the insurer's alleged noncompliance with § 379.118, but the cause was transferred to this Court on the dissenting opinion of Pritchard, J. Rule 83.01. We review as though on original appeal, Art. V, § 10, Mo.Const., and utilize portions of the Court of Appeals' opinion without quotation marks.

The Shqeirs obtained a homeowners' policy from American Family in July 1974, insuring the contents of their rented apartment at 4025 Harrison Street in Kansas City, Missouri. On June 5, 1975, they obtained two policies of automobile insurance from the same company. Later that month, the Shqeirs moved to a house on Forrest Street and permitted their homeowners' policy with American Family to lapse, relying on the seller's insurance. In December, 1975 they purchased a homeowners' policy from American Family covering their new home, and this policy was in force at the time of trial.

In September, 1975, American Family received a report from Equifax, Inc., which apparently provided investigating services to American Family, stating the Shqeirs had caused damages of $1,000 to the Harrison Street apartment and had been "taken to court" as a result. The Shqeirs were unaware of the report until they received a letter from American Family on April 20,

---

1. All statutory references are to RSMo 1978 unless otherwise noted. Section 379.118 provides as follows:

> If any insurer proposes to cancel or to refuse to renew a policy of automobile insurance delivered or issued for delivery in this state except at the request of the named insured or for nonpayment of premium, it shall, on or before thirty days prior to the proposed effective date of the action, send written notice by certified mail of its intended action to the named insured at his last known address. The notice shall state:
>
> (1) The proposed action to be taken, including, if the action is an increase in premium or reduction in coverage, the amount of increase and the type of coverage to which it is applicable, or the type of coverage reduced and the extent of the reduction;
>
> (2) The proposed effective date of the action;
>
> (3) The insurer's actual reason for proposing to take such action, the statement of reason to be sufficiently clear and specific so that a person of average intelligence can identify the basis for the insurer's decision without further inquiry. Generalized terms such as "personal habits", "living conditions", "poor morals", or "violation or accident record" shall not suffice to meet the requirements of this subdivision;
>
> (4) That the insured may be eligible for insurance through the assigned risk plan if his insurance is to be canceled.

1976, stating that one of their automobile insurance policies would not be renewed. The letter stated in pertinent part:

... To our regret, we have concluded that we must ask you to secure insurance coverage through some other source. Coverage under the policy identified above will continue until 12:01 A.M., Standard Time at the address shown in the policy on June 5, 1976, at which time and date all coverages shall cease.

We feel you are entitled to know the reason for our decision. In the completion of our underwriting of this policy, it came to our attention that you were taken to court for damage to the property at 4025 Harrison. We feel we must terminate this policy because of this action.

This action was influenced by information in a consumer report, made at our request by Equifax, Inc., P. O. Box 829, Kansas City, Missouri, 64141, a reputable source of information for business decisions.

This does not imply you are uninsurable. You may be eligible for coverage in our companion company, American Standard Insurance Company. If he has not already done so, your American Family Agent will be pleased to explain the personalized rating plan which tailors American Standard premiums to your individual requirements.

You are undoubtedly eligible for coverage under the Missouri Joint Underwriting Association:

Missouri Joint Underwriting Association,
1015 Locust Street
St. Louis, Missouri 63101
Phone: (314) 421–1245

In the days that followed, plaintiffs and their attorney contacted American Family's offices several times, attempting to convince them the Equifax report was false. American Family refused to reconsider its decision but advised the Shqeirs' attorney by letter that if Equifax could be persuaded to alter its report, American Family would reevaluate the information. Upon contacting Equifax, the Shqeirs were informed that their file had been turned over to American Family, and Equifax could not be of assistance. On May 6, 1976, American Family again wrote the Shqeirs, stating that on June 6, their second automobile insurance policy would be discontinued. This letter referenced the reasons stated in the April 26 letter and again suggested application to American Standard.

After lapse of the policies, plaintiffs filed a three-count petition attacking American Family and Equifax. The claim against Equifax, based on the federal Fair Credit Reporting Act, was settled and dismissed prior to trial. The Shqeirs also dismissed all claims against American Family, except the claim that American Family violated § 379.118 by failing to give written notice "setting forth clearly and specifically the actual reason" for nonrenewal of the automobile policies. Based on this alleged violation, plaintiffs sought $1.00 nominal damages for each nonrenewal and $500,000 punitive damages.

At trial, evidence was adduced from which it could be inferred that the true motivation for nonrenewal of the Shqeirs' automobile insurance policies was a plan by the insurer to restrict access to American Family and force at least some of its clients into a sister company, American Standard, with higher premiums for allegedly higher risks. Evidence was also introduced from which it could be inferred that the automobile policies were discontinued because of the neighborhood in which the Shqeirs lived. There was no evidence or allegation of actual damages suffered by plaintiffs. Indeed, at the time of trial, the Shqeirs had not completed an application to any other insurer to replace the American Family policies, and consequently, there was no claim that American Family's action prevented the Shqeirs from securing replacement insurance. The trial court directed a verdict for American Family on the ground plaintiffs failed to make a submissible case.

In this appeal, the dispositive question is whether the Legislature intended to create a private cause of action for violation of § 379.118. We conclude it did not and affirm.

Section 379.118 provides that if an insurer proposes to refuse to renew a policy of automobile insurance, it shall notify the insured 30 days or more prior to the effective date of the proposed action, and state, among other things, "the insurer's actual reason for proposing to take such action, the statement of reason to be sufficiently clear and specific so that a person of average intelligence can identify the basis for the insurer's decision without further inquiry." While § 374.280 authorizes the Director of the Division of Insurance to impose a penalty and suspend or revoke an insurer's license upon any willful violation of § 379.118,[2] the Legislature simply did not expressly create a private cause of action for violation of this statutory section. The creation of a private right of action by implication is not favored, and the trend is away from judicial inferences that a statute's violation is personally actionable. This trend found expression in *Christy v. Petrus*, 365 Mo. 1187, 295 S.W.2d 122 (1956), in which the Court was confronted with the question of whether the Workman's Compensation law created a private cause of action. Aware that violation of the statute considered in *Christy* was declared a misdemeanor, the Court stated the rule to be:

> We think it may be correctly stated that a statute which creates a criminal offense and provides a penalty for its violation, will not be construed as creating a new civil cause of action independently of the common law, unless such appears by express terms or by clear implication to have been the legislative intent. . . .

295 S.W.2d at 126[6].

In distinguishing the decision of *Cheek v. Prudential Insurance Co.*, 192 S.W. 387 (Mo. 1916), the Court said:

While the case of *Cheek v. Prudential Ins. Co.*, supra, may appear to approve a somewhat different rule, we think it must be assumed, irrespective of what may have been said in that opinion, that the court, in recognizing the historical reasons for the enactment of the 'service letter' statute and in considering the specific language used therein, must have found a legislative intent to create a civil cause of action in the employee.

295 S.W.2d at 126.

The Court in *Christy* further stated that the Legislature certainly could have established a cause of action in private parties injured by violations of the statute there involved, and listed a number of other statutes specifically providing for recovery of damages and penalties for their violation. 295 S.W.2d at 127. In that list, the Court included statutes which carried criminal sanctions for violation as well as those which provided only a penalty to be recovered by the government, and concluded that because the Legislature provided for individual recovery in many other statutory settings, failure to so provide in the statute under consideration evidenced legislative intent not to create a private right of action.

*Christy* was followed by *Bailey v. Canadian Shield General Insurance Co.*, 380 S.W.2d 378 (Mo.1964), in which the court referred with approval to the following passage from Lowndes, *Civil Liability Created by Criminal Legislation*, 16 Minn.Law Review 361, 363:

> '* * * When a statute expressly creates a criminal liability, the court which reads a civil obligation into the enactment is embarking upon a perilous speculation * *.

> * * * Verbally, the court justifies its action by 'finding' that the legislature intended to create a civil duty although it

**2.** Section 374.280 provides that notwithstanding. any other provisions of enumerated chapters, including 379, the Director of the Division of Insurance may, after a hearing, *order a forfeiture to the state* of a sum not to exceed $100 for each violation by any person willfully violating any provision of Chapters 374 through 379, and further authorizes the Director to *sus-* *pend or revoke the license* of any insurer for any willful violation of these chapters. Thus, a willful violation of Chapter 379 may result in a fine of up to $100 and loss of license to do business in the state. Because this statute imposes a penalty or forfeiture to be recovered by the state, it is penal in nature. *Tabor v. Ford*, 241 Mo.App. 254, 240 S.W.2d 737, 740 (1951).

did not explicity [sic] state this intention. Such an intention is usually imputed to the legislature where the court decides that the statute was passed for the protection of a class of which the plaintiff is a member. The obvious difficulty with this theory, however, is that even conceding a legislative intention to protect this class it has not evidenced any intention of achieving this protection by the imposition of a civil liability, since the only remedy provided by the statute is a criminal or penal proceeding.'

380 S.W.2d at 380–81.

Unlike the statutes at issue in *Christy* and *Bailey*, § 379.118 is not a criminal statute. In this connection § 374.280, can be classified as penal. *Tabor v. Ford*, 241 Mo. App. 254, 240 S.W.2d 737, 740 (1951). Since the heart of this decision, however, like *Bailey* and *Christy*, is a determination that the Legislature did not intend to create a private right of action, we find no significant basis for distinguishing between the two. When the Legislature has established other means of enforcement, we will not recognize a private civil action unless such appears by clear implication to have been the legislative intent.

It may be argued that because the Legislature did not explicitly deny the creation of a new cause of action, an inference arises that such was intended.[3] Against this contention is the fact that in other statutory schemes directed toward rectifying perceived evils, our Legislature has only in limited instances deemed it appropriate to expressly create private rights of action.[4] Thus, the contrary argument runs that because the Legislature has provided private rights of action only in special instances, the absence of express creation of such right in § 379.118 demonstrates a legislative purpose not to create the civil liability for which plaintiffs contend.

■ Apart from the absence of language establishing a private remedy for violation of § 379.118, additional factors convince us such was not intended. A private remedy will not be implied when it does not promote or accomplish the primary goals of the statute, and here, such appears to be the case. It should be emphasized the section under consideration is but a small part of a comprehensive statutory scheme designed to regulate the insurance industry.[5] Further, an insurer may opt not to renew an insurance policy for any reason other than those statutorily prohibited.[6] Given these propositions, the purpose of § 379.118 appears threefold: (1) prevent nonrenewal or cancellation for statutorily prohibited reasons; (2) provide the insured an opportunity to convince the insurer not to follow through on its proposed action;

3. For example, § 379.202, RSMo 1969 (1967 Laws of Missouri 568–70), previously regulating the *cancellation* of automobile insurance, expressly denied a cause of action "for any statements made ... in connection with the written notice ...." Section 379.202.3(2), RSMo 1969. This statute was repealed in 1973 and replaced by § 379.110, et seq., which is silent on the private remedy subject. 1973 Laws of Missouri 450–52.

Further, a comparable statute regulating cancellation and nonrenewal of homeowners' insurance explicitly bars a private cause of action "for any statement ... in any written notice ... specifying the reasons for cancellation or nonrenewal ...." Section 375.006.

4. *See* 130.028, RSMo 1978 (political coercion); 197.032, RSMo 1978 (discrimination for refusal to perform abortion); 287.780, RSMo 1978 (discharge of or discrimination against employee for exercising rights under worker's compensation law); 290.440, RSMo 1978 (employment discrimination against women); 314.105, RSMo 1978 (discrimination in granting credit); 375.420, RSMo 1978 (vexatious refusal to pay insurance claim); 407.025, RSMo 1978 (unfair merchandising practices); 417.051, RSMo 1978 (fraudulent registration of trademark); 417.056, RSMo 1978 (appropriation of trademark); 408.550, RSMo Cum.Supp.1981 (discrimination in retail credit sales); 409.411, RSMo Cum. Supp.1981 (securities fraud).

5. Rights and duties pertaining to virtually every aspect of insurance are minutely detailed in more than 10 chapters of the Revised Statutes. *See*, Chapter 374, et seq., RSMo 1978.

6. Section 379.114.3 forbids cancellation or nonrenewal "solely because of the age, residence, race, sex, color, creed, national origin, ancestry or lawful occupation, including the military service, of anyone who is or seeks to become insured ...."

and (3) allow the insured ample time to obtain replacement coverage. Plaintiffs have failed to demonstrate that inferring a private right of action in the insured will promote or accomplish these goals. No claim is made[7] that American Family refused to renew the Shqeirs automobile policies for a statutorily prohibited reason. Further, it is undisputed the Shqeirs were given and availed themselves of the opportunity to dissuade American Family from its proposed nonrenewal of the policies.[8] Hence, we are unable to conclude creation of a private right of action in plaintiffs is necessary to accomplishment of the first two legislative purposes. An examination of the third purpose (opportunity to secure new insurance) compels the same conclusion. The requirement that notice be sent at least 30 days prior to any intended nonrenewal permits the insured to arrange alternative coverage. Though the record reveals the Shqeirs did not obtain substitute insurance for their automobiles, no evidence links this failure with the American Family notices of nonrenewal.[9] Both notices were sufficiently timely for the Shqeirs to obtain alternative coverage.

In sum, it cannot be said that the absence of a private cause of action permitting recovery of actual and punitive damages thwarts the legislative goals of § 379.118.

Plaintiffs would analogize § 379.118 to the service letter statute, § 290.140, and bring their situation under the aegis of *Cheek v. Prudential Insurance Co.*, 192 S.W. 387 (Mo.1916), in which this Court inferred a private remedy for violation of § 290.140. The decision in *Cheek*, however, rests against a unique historical backdrop and should not be interpreted as authorizing judicial creation of a civil cause of action for violation of any legislative enactment imposing an affirmative duty. The service letter statute was enacted in response to "a great public evil", the blacklisting by employers of former employees, which made many workers virtually unemployable and resulted in severe economic hardship. *Christy*, 295 S.W.2d at 125. Section 290.140 regulates the custom of communications between past and potential employers. From this it is clear the Legislature recognized that benefits could accrue from permitting a previous employer to disclose accurate information respecting his employee's work habits, and similar facts. By reason of this unique history, the Court found a legislative intent to create civil liability.[10] To the extent that a "custom of communications" among automobile insurers exists, it is regulated in § 379.114.3, which prohibits subsequent automobile insurers from requiring an applicant policyholder to disclose information concerning nonrenewals or cancellations by prior insurers, and from cancelling, refusing to write or refusing to renew an automobile policy solely because another insurer has canceled, refused to write or refused to renew a policy.

We conclude that § 379.118 does not create the private right of action plaintiffs seek to invoke.[11]

---

**7.** Though such was contended originally in the Shqeirs' petition, this claim was voluntarily dismissed prior to trial.

**8.** The Shqeirs urge on appeal that § 379.118 impliedly mandates a good faith obligation on the part of the insurer to reconsider its proposed action if the insured contests the reason given for nonrenewal or cancellation. However, when a statute does not even explicitly grant a cause of action, we are understandably hesitant to enlarge the duty imposed by the statute, and then imply a private remedy for its violation.

**9.** Subsection 379.114.3 forbids inquiry by an automobile insurer into an applicant's previous cancellations or nonrenewals by other insurers.

**10.** It is of interest that the Missouri General Assembly this year amended the service letter statute, markedly curtailing recovery of punitive damages under § 290.140. Conf. Comm. Substit. for SB 747, passed by the 2d Reg. Session of the 81st Gen. Assembly and signed by the Governor on June 17, 1982.

**11.** Other jurisdictions under a variety of statutory schemes have dealt with similar violations by holding that an insurer remains liable for continued coverage following insufficient notice. *Government Employees Ins. Co. v. Insurance Commissioner*, 40 Md.App. 201, 389 A.2d 422 (1978); *Civil Service Employees Insurance v. Rodriguez*, 25 Ariz.App. 534, 544 P.2d 1135 (1976); *Goetz v. Country Mutual Ins. Co.*, 28 Ill.App.3d 154, 328 N.E.2d 109 (Ill.App.1975);

The judgment of the trial court is affirmed.

DONNELLY, C. J., and WELLIVER and MORGAN, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER and HIGGINS, JJ., dissent and concur in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge, dissenting.

I respectfully dissent and adopt portions of the dissent of Pritchard, J., without quotation marks, of the Missouri Court of Appeals, Western District, which was filed when this case was decided by the court of appeals.

The majority opinion is based upon the conclusion that no private right is created by a violation of § 379.118. It is to that conclusion which this dissent is principally directed. Certainly in the statutory provision, § 379.118, there is a close analogy to the cases under the service letter statute, § 290.140. The case which announced the existence of a private cause of action under that statute is *Cheek v. Prudential Ins. Co.*, 192 S.W. 387 (Mo.1916). *Cheek*, although a long line of cases follow it, still stands as the law of this state. It was there contended by plaintiff that the (service letter) statute, which imposed a duty upon an employer to give a letter of dismissal to employees quitting service "truly stating for what cause, if any, such employee has quit such service", was for the benefit of a class of individuals, a right of action is given to any one of that class who may be damaged by the breach of that duty. The court sustained the contention, quoting and relying upon 1 Corpus Juris, p. 957 [now in substance 1 C.J.S. Actions, § 12, p. 996]: "The true rule is said to be that the question should be determined by a construction of the provisions of the particular statute and according to whether it appears that the

duty imposed is merely for the benefit of the public and the fine, or penalty, a means of enforcing its duty and punishing a breach thereof, *or whether the duty imposed is also for the benefit of particular individuals, or classes of individuals.* If the case falls within the first class, the public remedy by fine, or penalty, is exclusive, *but if the case falls within the second class a private action may be maintained, particularly where the injured party is not entitled*, or not exclusively entitled, *to the penalty imposed.*" [Italics here added.] The *Cheek* court went on to quote 1 Corp. Jur. 952 [now in substance contained in 1 C.J.S. Actions, § 9B, p. 990], "It is a general rule that wherever a statute imposes a duty for the benefit of particular individuals, or classes of individuals, any one within the benefit of the statute who sustains an injury by reason of a breach thereof has a right of action against the person guilty of the breach. The private right of action is not affected by the fact that the statute also makes such breach of duty a criminal offense."

The majority opinion relies upon *Christy v. Petrus*, 365 Mo. 1187, 295 S.W.2d 122 (1956), in holding that § 379.118 does not create a private right of action. The *Christy* case may be distinguished, and it, in fact, distinguishes the *Cheek* case on its statutory provisions. In *Christy*, the statute merely imposed a criminal penalty only for the discharge of or discrimination against an employee for exercising his rights under the Worker's Compensation Act. The court, at 295 S.W.2d page 125, said, "In the *Cheek* case the court placed great emphasis on the fact that the statute there under consideration enjoined upon the corporate official a positive, affirmative duty to issue the letter and concluded that damages could be recovered for a breach of said duty. In a later case this court again considered that statute and indicated that the first part of the section, relating to the duty of issuing the letter, is remedial and is

*Messing v. Nationwide Mutual Ins. Co.*, 42 A.D.2d 1030, 348 N.Y.S.2d 439 (1973); *Concord Group Ins. Co. v. Terry*, 130 Ga.App. 13, 202 S.E.2d 471 (1973); *Financial Indemnity Co. v.*

*Cargile*, 32 Ohio Misc. 103, 288 N.E.2d 861 (Ohio Ct.C.Pleas 1972); *Nationwide Mutual Ins. Co. v. Davis*, 7 N.C.App. 152, 171 S.E.2d 601 (1970).

the basis for the damage action against the employer, and the latter portion is penal and may be enforced by the prosecution of the corporate superintendent or manager. *State ex rel. Terminal R.R. Ass'n v. Hughes*, 350 Mo. 869, 169 S.W.2d 328. It therefore becomes significant to note that the instant section has no provision relating to any positive duty, but merely provides a criminal penalty in the event the employer shall discharge an employee for the reason stated."

*Bailey v. Canadian Shield General Insurance Co.*, 380 S.W.2d 378 (Mo.1964), is inapposite to the statutory factual situation of this case, in that the statute, the same as in *Christy*, imposed no positive, affirmative duty on the alleged malfeasant, thus it is no comfort or support to the majority opinion.

The majority opinion ignores the differentiation between statutes which are purely penal in nature and those which are both remedial and penal in nature, that difference being noted in the *Christy* case, *supra*, 295 S.W.2d page 125. The statute here, § 379.118, in an application in accordance with the *Cheek* case, has aspects both remedial and penal. It is clearly remedial in its provisions that actual reasons for nonrenewal of automobile policies be given to an insured, the obvious purpose of which is to give the opportunity to insured to challenge the correctness of the stated "actual reasons." In these days of practically compulsory carriage of automobile liability insurance under the financial responsibility act, and the requirements of physical damage and theft insurance of mortgages, and the increasing difficulty of obtaining such insurance coverages, the purpose of the statute, in its protection of insured, becomes more evident. In this case, as stated in the majority opinion under § 374.280, the superintendent of insurance *may* (not "shall") impose a forfeiture of $100 for each violation of § 379.118, and revoke licenses for willful violations. Under the *Cheek* case, *supra*, that penalty provision does not destroy the remedial provisions of the statute, or the private right of action thereunder. In addition to the *Christy* case, note *State ex rel. Ashcroft v. Wahl*, 600 S.W.2d 175,

180[2] (Mo.App.1980), and cases cited, " '[a statute] should be considered a remedial statute when enforcement of the remedy is sought and penal when enforcement of the penalty is sought.' "

There is no appellate court case decided under the provisions of § 379.118 with which the majority opinion is directly in conflict. That situation, however, is not an absolute requirement. An opinion may be in conflict with another decision of an appellate court of this state in principle of law. In *Knorp v. Thompson*, 352 Mo. 44, 175 S.W.2d 889, 893[1] (1943), *Keller v. Summers*, 262 Mo. 324, 171 S.W. 336, 338 (1914), was quoted: " 'The Constitution was not concerned with the sums of money awarded the plaintiff or other decretal orders of the courts further than these were the consequences of the *principles of law and equity announced* in the opinion or decision and *upon which they were based.* What the Constitution designed to prevent was repugnancy of rulings between Courts of Appeals or between them and the Supreme Court, and by "rulings" it meant *expositions of the law or the legal reasons upon which the courts vested their judgment* on the questions presented or the issues joined. * * * It was harmony of doctrine and adjudication, which this clause of the Constitution was framed to safeguard, * * *.' " The majority opinion is repugnant to the principle of law of the *Cheek* case, *supra*. I would reverse and remand this case for new trial and, therefore, I dissent.